HOLIDAY INNS, INC., Plaintiff-Appellee, Cross-Appellant,

v.

C. H. ALBERDING, Defendant,

Airport Holiday Corporation, et al., Defendants-Appellants, Cross-Appellees.

No. 81–1539

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1982.

Blankenship, Potts, Aikman, Hagin & Stewart, Howard Jensen, Dallas, Tex., Whitten, Haag, Cobb & Hacker, C. Terry Hagin, Abilene, Tex., for defendants-appellants, cross-appellees.

James L. Kurtz, Washington, D. C., E. Eldridge Goins, Jr., Dallas, Tex., for plaintiff-appellee cross-appellant.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellee and cross-appellant Holiday Inns, Inc. supervises a chain of over 1700 hotels. Many of these hotels operate under a franchise agreement by which the owner is entitled to display the familiar "Holiday Inn" sign (referred to as the "Great Sign") and other distinctive emblems of the chain. In 1956, Holiday Inn signed a license agreement with Tex-Mex Inn Operating Co. (Tex-Mex) that permitted Tex-Mex to operate a 200-room hotel located at 7800 Lemmon Avenue in Dallas, Texas, as a Holiday Inn. The agreement provided for termination of the license, however, if Tex-Mex did not meet Holiday Inns' standards. On February 28, 1975, Holiday Inns wrote Tex-Mex a letter terminating the agreement and requesting that Tex-Mex remove all Holiday Inn service marks from the property. Despite this and subsequent demands for removal of the trademarks, the hotel continued to display the Great Sign [1] and a small sign bearing the mark "Holiday Inn" in distinctive script.

Holiday Inns brought this action in May, 1976, alleging trademark infringement under state and federal law [2] and seeking a permanent injunction, treble damages, and

---

1. The Great Sign was displayed in unaltered form until June 5, 1975. At that time, Tex-Mex paid for removal of certain distinctive features from the sign, including the words "Holiday Inn." The color and shape remained generally the same, and the sign was illuminated at night. The modified sign remained on display until after the granting of an injunction in December, 1978, at which time it was covered with plastic.

2. The district court, 493 F.Supp. 1625, ultimately based its jurisdiction on 28 U.S.C. § 1338 and determined liability under the Lanham Act, 15 U.S.C. § 1051 et seq.

attorneys' fees. Although the original complaint named C. H. Alberding as owner and operator of the hotel, which by that time was operating as the "Holiday Hotel", Alberding's answer revealed that Tex-Mex was the actual operator of the facility and that appellant/cross-appellee Airport Holiday Corp. (Airport) was the owner. An amended complaint joined Tex-Mex and Airport as defendants; Alberding, who served as president and director of both defendant corporations, eventually was dismissed from the suit.

Holiday Inns moved for partial summary judgment on liability in July, 1977. Two affidavits, photographs of the offending signs, and a memorandum of law accompanied the motion. Tex-Mex and Airport, after filing separate counterclaims for harassment, responded in August of 1978 with a joint memorandum and affidavit in opposition to the motion for summary judgment. The district court heard argument on the motion on December 4, 1978. On December 19, the court granted partial summary judgment against Tex-Mex and Airport on the issue of liability. It found that the defendants had presented no issue of material fact and that

> [t]he "Great Sign" being used by defendants at the time of the hearing is essentially identical to the registered marks of the Plaintiff. This sign is likely to cause confusion, mistake or deception with Plaintiff's registered service marks. The minor changes made by the Defendants are cosmetic in nature and inconsequential. Surely such inconsequential changes will not avoid a finding of infringement and unfair competition.

The judgment enjoined Tex-Mex and Airport from any further use of the Great Sign or other Holiday Inn service marks.

The parties proceeded to a bench trial on damages in October, 1979. In a judgment entered on October 19, 1981, the court found Tex-Mex and Airport jointly and severally liable for $96,795.00, plus interest, in profits and damages, and $35,000.00 in attorney's fees.

Airport has appealed from this judgment on the issues of liability and damages; Holiday Inns has cross-appealed, submitting that the damage award is insufficient. We affirm.

### I. Airport's Appeal

Airport presents two questions on appeal. First, it argues that the district court erred in granting summary judgment against Airport on liability because the record contains no evidence that Airport—as opposed to Tex-Mex—ever "used" the trademarks in violation of the Lanham Act, 15 U.S.C. § 1114(1).[3] As stated by Airport, "the legal issue is whether mere ownership of real estate upon which an infringement of a trademark takes place is sufficient to assess liability on the owner."

■ The district court must render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The defendants' joint response to Holiday Inns' motion for partial summary judgment raised no genuine issue as to any material fact. As Airport admits, the question presented on appeal is purely a legal one. However, we decline to consider even this issue of law because we conclude that Airport did not properly present it in the court below. We realize that our rule against considering issues raised for the first time on appeal can give way when a pure question of law is involved and the refusal to consider it will result in a miscarriage of justice. *See Martinez v. Matthews,* 544 F.2d 1233, 1237 (5th Cir. 1976). However,

---

**3.** The Act imposes civil liability on any person who, without consent of the registrant, shall "use in commerce any reproduction, counterfeit copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

we perceive no possibility of such a miscarriage here.

The only legal argument pressed by Airport individually in the joint responsive motion of defendants below was that Airport had purchased the Great Sign "with the knowledge of and acquiescence of Plaintiff and without any restriction being placed thereon by Plaintiff against Airport Holiday Corporation, and the Plaintiff has waived or is estopped to claim any trademark violation against Airport Holiday Corporation." This brief "waiver and estoppel" argument, apparently predicated upon a theory that Holiday Inns had a duty expressly to forbid Airport from using its trademarks, did not deter the district court from holding Airport liable, as undisputed owner of the Great Sign and the rest of the Holiday Hotel property, for the infringement.

Airport now seeks to obtain a reversal of the court's judgment by suggesting that a mere owner of real estate is not chargeable with trademark infringements or other torts committed by another party "operating" on the owner's property. As sole support for this allegation of error, Airport cites *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 324 F.Supp. 1371, 1381 (S.D. Tex.1969), *aff'd*, 441 F.2d 631 (5th Cir. 1971), *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971), in which the court held that "a 'non-operator,' as simply the owner of an interest in realty (the leasehold estate)" in a drilling venture was not responsible for the drilling contractor's infringement of the patent on a drilling bit.

■ Apart from obvious dissimilarities between the facts of *Kinnear-Weed* and those of the case before us,[4] our rejection of this appeal stands upon Airport's failure to present this authority or any legal argument derived from it to the court below. Although the defendants took over a year to reply to the motion for summary judgment, neither in that response nor at any other time did Airport attempt to forestall an adverse decision by providing the district judge with authority or argument in the vein now sought to be explored. Our discretion to entertain a legal argument presented for the first time on appeal "is a right to prevent a clear miscarriage of justice apparent from the record, and not a right to afford a defeated litigant another day in court because he thinks that if he were given the opportunity to try his case again upon a different theory he might prevail." *Miller v. Avirom*, 384 F.2d 319, 323 (D.C.Cir.1967) (quoting *Helvering v. Rubinstein*, 124 F.2d 969, 972 (8th Cir. 1942)). That Airport's appeal lies from a summary judgment does not diminish the importance of this insistence upon thorough presentation of issues in the district court.

Similarly, Airport's second point of error falls victim to Airport's want of caution in the proceedings below. The court's award of $96,795.00 against Airport and Tex-Mex, jointly and severally, included $11,464.50 in profits obtained from the infringement. The court derived this figure by computing thirty percent[5] of $38,215.00, the amount to which the parties stipulated as "profit of the Defendants" during the period of the infringement. Airport now claims on appeal that Holiday Inns is not entitled to recover profits from Airport because it never proved that Airport actually received these profits.

Yet the record clearly shows that Airport, acting with Tex-Mex through a single attorney, signed a pretrial stipulation on October 9, 1979, conceding that "[d]uring the period of March 1, 1975 to January 1, 1979, the profits *of the Defendants* were $38,-

---

4. The portion of *Kinnear-Weed* cited above was decided under Texas precedents pertaining to oil drilling ventures. The court was uncertain that any infringement of the drilling bit patent had occurred. More determinative, however, was that the exonerated "non-operator" was merely an investor and did not own, use, or have any responsibility for the drilling equipment. Airport, by contrast, admits to outright ownership of the Great Sign and the other motel properties found to have infringed plaintiff's trademark.

5. As explained in part II, *infra*, the trial judge reasoned that only thirty percent of the hotel's business during the period in question was attributable to the infringement.

215.00." In fact, although Airport complains of the trial court's "confusion" in treating Airport and Tex-Mex identically instead of as separate parties, the entire stipulation refers to "the Defendants" as one party. It even describes the steps taken by "the Defendants" to modify the Great Sign. At no time before or during the trial on damages, so far as the record shows, did Airport claim that it had not received profits earned by the hotel that it admittedly owned.

 As Holiday Inn points out, Section 35 of the Lanham Act, 15 U.S.C. § 1117, provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." In any event, Airport stipulated its profits as "a defendant" and is bound by that agreement. *E.g. Morelock v. NCR Corp.*, 586 F.2d 1096, 1107 (6th Cir. 1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); *A. Duda & Sons Cooperative Association v. United States*, 504 F.2d 970, 975 (5th Cir. 1974).

II.  Holiday Inns' Cross-Appeal

Holiday Inns contends that the district court erred in limiting recovery to thirty percent of defendants' profits and damages for a total of $32,265.00, an amount later trebled pursuant to 15 U.S.C. § 1117. Having reviewed the trial judge's reasoning, however, we conclude that he acted well within the bounds of his discretion. The court could properly accept the evidence offered by the defendants, which was to the effect that only thirty percent of the hotels' business during the period of infringement was attributable to the improper use of plaintiff's service marks. The court acted reasonably, therefore, in reducing the damage figure to that percentage of the total profits and loss royalties. The court used its discretion in plaintiff's favor, after all, by trebling the thirty percent figure.

"Great latitude is given the trial judge in awarding damages, and his judgment will not be set aside unless the award is clearly inadequate." *Drake v. E. I. DuPont de-Nemours & Co.*, 432 F.2d 276, 279 (5th Cir. 1970). This is especially true of an award fashioned pursuant to the Lanham Act, which expressly confers upon district judges wide discretion in determining a just amount of recovery for trademark infringement. *See* 15 U.S.C. § 1117.

The judgment below is AFFIRMED in all respects.