Beryl W. MINTON, Carl Wiley, and Frank Green, Plaintiffs-Appellees,

v.

SOUTHERN RAILWAY COMPANY, Defendant-Appellant.

No. 16755.

United States Court of Appeals
Sixth Circuit.

Oct. 11, 1966.

Clyde W. Key, Knoxville, Tenn., Key & Lee, Knoxville, Tenn., of counsel, for appellant.

Ralph E. Vineyard, Chattanooga, Tenn., H. H. Gearinger, Chattanooga, Tenn., on brief; Gearinger & Vineyard, Swafford & Taylor, Chattanooga, Tenn., of counsel, for appellees.

Before WEICK, Chief Judge, PHILLIPS, Circuit Judge, and CECIL, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

A seventy-two year old widow was killed while walking through appellant's railroad yard at New Tazwell, Tennessee.

In an action for her wrongful death instituted by the children of the decedent against the railway company, the jury returned a verdict of $10,000.

Appellant's motion for a directed verdict was overruled by the district judge, the Honorable Robert L. Taylor. Appellant stood on its motion for a directed verdict and introduced no evidence. Following the return of the verdict, appellant moved for a judgment *non obstante verdicto*, which also was denied by the district judge.

 The questions presented on this appeal are whether the district court erred in denying defendant's motion for a directed verdict and a judgment notwithstanding the verdict. In considering a motion for a directed verdict, the "trial judge must view the evidence in the light most favorable to the plaintiff. * * * Only if reasonable minds could arrive at but one conclusion and that in favor of the defendant should a verdict be directed. 'Where such evidence on an issue is so overwhelmingly against the plaintiff's contention as to leave no room to doubt that a fact is not what the plaintiff claims it to be and such fact is essential to plaintiff's cause of action, the Court is authorized as a matter of law to direct a verdict for the defendant.'" (Citations omitted.) Price v. Firestone Tire and Rubber Company, 321 F.2d 725, 726 (C.A.6).

" 'In determining the propriety of the directed verdict for defendant, we must take that view of the evidence, and the inferences reasonably and justifiably to be drawn therefrom, most favorable to the plaintiff, and determine whether or not, under the law, a verdict might be found for the plaintiff.' * * *" Southern Railway Company v. Hutchings, 288 F.2d 837, 838 (C.A.6). See also Wallace v. Louisville and Nashville Railroad Company, 332 F.2d 97 (C.A.6).

 The applicable judicial standard to determine the correctness of the denial of a directed verdict and a judgment notwithstanding the verdict is the same, since the motion for a judgment notwithstanding the verdict merely renews an earlier motion for a directed verdict. United States v. Simmons, 346 F.2d 213 (C.A.5); Wieloch v. Rogers Cartage Co., 290 F.2d 235 (C.A.7); Wright, Federal Courts § 95 at 370; 6 Moore, Federal Practice, § 59.08(5) at 3814.

Thus, the single question to be determined on this appeal is whether there is any substantial evidence to support the verdict. Admittedly no jury case was made out unless the Tennessee doctrine of last clear chance is applicable. Appellant concedes that the following part of the charge of the district judge to the jury is a correct statement of the doctrine of last clear chance under Tennessee law.

"Now there is another exception to the rule of contributory negligence which is recognized in Tennessee and which was recognized under the common law. This exception is known as the doctrine or rule of last clear chance. The rule applies where the plaintiff by his own negligence has placed himself, or herself, in a position of peril and the defendant by the exercise of ordinary care has a chance to avoid injuring him or her.

"As applied in ordinary situations, a defendant is not bound in all events to avoid injuring the negligent plaintiff. The law requires the defendant to exercise ordinary care to avoid injuring the negligent plaintiff, if he sees or discovers the plaintiff in the perilous situation in time to avoid injuring him. The rule applies only in a situation from which the plaintiff by the exercise of ordinary care cannot extricate himself or herself. The rule, restated, is that when defendant discovers plaintiff in a position of peril in which he has placed himself by his own negligence and from which he cannot extricate himself by the exercise of reasonable care, the law requires that defendant exercise ordinary care to avoid injuring or killing the plaintiff. Failure of defendant to exercise such care is negligence and, if the proxi-

mate cause of injury or death, renders defendant liable in damages.

"As applied to railroads, the rule of the last clear chance places a somewhat heavier obligation upon the railroad. In the ordinary situation, the rule comes into play only if defendant actually saw the plaintiff in peril. It is sometimes called the doctrine of discovered peril. As applied to a railroad, the rule is stated thus:

"When the railroad crewmen saw, or in the exercise of ordinary care ought to have seen the plaintiff in a position of peril in which he has negligently placed himself or herself, and from which peril he or she cannot by the exercise of ordinary care extricate himself or herself, then the law requires the railroad crewmen to exercise ordinary care to avoid injuring such plaintiff."

Immediately prior to her death, decedent had been to a grocery store and was carrying a bag of groceries and an umbrella on the way to her home. She had made it a habit to walk through the railroad yard instead of along the sidewalk because highway traffic made her extremely nervous. In the railroad yard there was a main track and a spur track on either side, all running east and west. The decedent was last seen walking between the main line track and north spur track, facing the approaching cut of cars. There was no eye witness to the accident.

The train had been moving at a "slow walk" when it was switching. The morning following the accident the freight cars were examined and blood was found on the second wheel on the east end of the easternmost car. This would have been the second car in the cut of cars that caused the death.

Portions of the body of the decedent were strewn along the north rail of the spur track. Groceries and the umbrella, which the decedent had been carrying, were discovered partly between the rails of the north spur track and partly on a bank some six feet north of the spur track and some distance west of where the main portions of her body were found.

Appellant contends that there is no evidence from which the jury could have found that any railroad employee saw, or in the exercise of ordinary care ought to have seen, the decedent in a position of peril.

There was evidence that a member of the crew saw the decedent and called to her, but the record is not clear as to his or her whereabouts at that time.

Darrell Campbell, who was working on a pulpwood lot adjoining the railroad yard at the time of the accident, testified on cross-examination as follows:

"Q So that when this movement was made, that is, this cut of cars was switched on this spur track, they passed you?

"A That's right.

"Q Were you outside where you could see the cut of cars?

"A I was standing outside.

"Q There was a trainman on the lead car, wasn't there?

"A Yes.

"Q And you heard a walkie-talkie radio?

"A Yes, sir.

"Q These train crews, you know, signal each other by two-way walkie-talkie radios in the yard, didn't they?

"A Yes.

"Q About how fast was this cut of cars going out past there?

"A They go slow through the side-track there."

Another witness, Jim Poore, testified that he was watching the switching of the train at the time of the accident, and on cross-examination said:

"Q And there was a crewman riding on that cut of cars as it passed you?

"A I never saw anyone but he evidently was there because he cut the cars off just the other side of the street just as quick as it stopped."

From the quoted testimony we find that the jury could have concluded that a trainman was riding on the forward end of the cut of cars at the time the decedent was struck; that this trainman was in contact with the engineer by radio; that these employees of the railroad were in a position where, in the exercise of ordinary care, they ought to have seen the decedent in a position of peril and that they had a "last clear chance" to avoid striking her.

Appellant was in a position to know whether or not there was a trainman riding on the cut of cars, and, if so, whether he saw the decedent or was in a position where he could or should have seen her, or whether he could have notified the engineer by radio in time to avoid striking her. Nevertheless appellant did not offer any evidence to contradict the above-quoted testimony.

We hold that the district court did not err in overruling appellant's motions for a directed verdict and judgment *non obstante verdicto*.

Affirmed.