Peggy Sue O'NEILL and David O'Neill, Individually and as husband and wife, Plaintiffs-Appellants,

v.

Vartkes KILEDJIAN, Defendant-Appellee.

No. 74–1983.

United States Court of Appeals, Sixth Circuit.

Feb. 24, 1975.

Walter Buford, Memphis, Tenn., for plaintiffs-appellants.

Garvin M. Gentry, Memphis, Tenn., for defendant-appellee.

Before PECK, MILLER and LIVELY, Circuit Judges.

### WILLIAM E. MILLER, Circuit Judge.

This medical malpractice case was tried in federal court at Memphis, jurisdiction having been invoked on the basis of diversity of citizenship. Peggy Sue O'Neill and her husband charged the defendant, Dr. Vartkes Kiledjian, with negligence in his treatment of Mrs. O'Neill. Specifically, it was alleged that complications followed the total removal by the defendant of the remainder of her thyroid gland in September 1972. Essentially, the plaintiffs alleged that the defendant was negligent, first, in his diagnosis and treatment of the condition, and secondly, in the surgical procedure to remove the gland. At the conclusion of the evidence, the jury returned a $100,000 verdict in favor of Mrs. O'Neill and a $25,000 verdict on her husband's claim for loss of services and consortium.

On defendant's motion, the district judge granted a new trial. Plaintiffs moved the court to reconsider its decision, claiming that they had no funds for another trial and could not offer any additional proof of negligence. The district court then entered a judgment for defendant notwithstanding the verdict.

Peggy Sue O'Neill had had a history of medical difficulties relating to the functioning of her thyroid gland. In 1966 she suffered from Graves Disease, a condition caused by an overactive thyroid gland. In an effort to correct this problem, approximately 95% of her thyroid was removed by surgery. The operation left her with a small portion of the gland on each side of her neck. Five years later, in 1971, she again was afflicted with a hyperactive thyroid condition. On this occasion, she sought care from the clinic at St. Joseph Hospital in Memphis. A second operation was performed, and the thyroid remaining on the right side was removed.[1] Within a year of this operation and soon after she had given birth to a child, plaintiff was again hospitalized at St. Joseph Hospital because of a thyroid problem. On September 20, 1972, the defendant, then the chief surgical resident at the hospital, operated to remove the portion of the thyroid remaining on the left side of the neck. Shortly thereafter, Mrs. O'Neill went into hypocalcemic shock, an infrequent complication of thyroid surgery.

The parathyroid glands, located adjacent to the thyroid, regulate the amount of calcium in the blood stream. An abnormally low amount of calcium in the blood, or hypocalcemia, is caused by hypoparathyroidism resulting from damage to or removal of all of an individual's parathyroid glands. Because of their small size and their location, these glands are difficult to identify during surgery. According to the pathology report, made after the operation, the mass removed by Dr. Kiledjian contained no parathyroid tissue. Nevertheless, it is undisputed that after the surgery all such glands had either been removed or had ceased to function.[2] The plaintiff's condition has been diagnosed as a permanent one requiring daily medication.

The case is presently before us to review the correctness of the district

---

1. It should be noted that Dr. Kiledjian, the defendant in this case, assisted in the 1971 operation.

2. Although an individual normally has four parathyroid glands, a person needs only one such gland to regulate the calcium flow into the bloodstream. Since prior to the 1972 operation the plaintiff had not experienced hypocalcemia, it was assumed at trial that she had at least one healthy parathyroid gland before the last surgery.

court's action in entering judgment n. o. v. for the defendant.

On a motion for judgment n. o. v. as on a motion for a directed verdict, the district court must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury. 9 C. Wright & A. Miller, Federal Practice and Procedure, Sec. 2521, at 537 (1971). The determination is one of law to be made in the first instance by the district court. *See* Appleman v. United States, 338 F.2d 729, 730 (7th Cir. 1964), cert. denied, 380 U.S. 956, 85 S.Ct. 1090, 13 L.Ed.2d 972 (1965); 9 Wright & Miller, Sec. 2524, at 541 (1971). The standard for measuring the legal sufficiency of the evidence is the same both on a motion for a directed verdict and on a motion for judgment n. o. v. Moran v. Raymond Corp., 484 F.2d 1008, 1014 (7th Cir. 1973), cert. denied, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974); *cf.* Minton v. Southern Ry. Co., 368 F.2d 719, 720 (6th Cir. 1966). Furthermore, the standard remains the same when the trial court's decision is reviewed on appeal. *See* Calloway v. Central Charge Service, 142 U.S.App.D.C. 259, 440 F.2d 287, 289 n.2 (1971); 9 Wright & Miller, Sec. 2524, at 542 (1971).

[4] "The law is well settled in this circuit and elsewhere that in a diversity case, the trial judge is bound by state law as to the sufficiency of evidence." Chumbler v. McClure, 505 F.2d 489, 491 (6th Cir. 1974); *accord* Moskowitz v. Peariso, 458 F.2d 240, 244 (6th Cir. 1972). The Tennessee law was stated in Poe v. Atlantic Coast Line Railroad Co., 205 Tenn. 276, 284, 326 S.W.2d 461, 464 (1958). It required the court

> to look to all the evidence, to take as true the evidence for the plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for the plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion for a directed verdict must be denied.

According to the district court, the plaintiff's single theory of negligence was predicated upon two assumptions: "1) That the defendant was negligent in not first treating and observing plaintiff before undertaking a repeated thyroid surgery; and 2) That the defendant was negligent in the surgical procedure undertaken, resulting in the condition known as hypoparathyroidism or tetany." The lower court concluded that there was no proof that the defendant performed the operation in a negligent manner. We have reviewed the record and concur in this conclusion. All the expert witnesses agreed that the parathyroid glands were difficult to identify and to isolate and that they could be damaged or even removed inadvertently in performing thyroid surgery. Other proof on this point consisted of statistical data indicating that the occurrence of hypoparathyroidism after thyroid surgery was rare. Yet proof that a particular surgical result was unusual would not alone be sufficient to establish negligence. At best, it would relegate the question of causation to the realm of speculation or conjecture.

The more troublesome question concerns the defendant's decision to treat Mrs. O'Neill's illness by means of a thyroidectomy. Apparently the district court reasoned that as a matter of substantive state law the defendant could not be held liable for the unfortunate consequences of his decision to operate. It is a well-established rule in Tennessee that a doctor will not be held responsible for the exercise of his professional judgment in the selection of one method of treatment over another when both alternatives have the support of a considerable body of competent medical opinion in the community.[3] Gresham v. Ford, 192 Tenn. 310, 241 S.W.2d 408 (1951).

---

3. Plaintiffs' sole medical expert was a Philadelphia practitioner. The district court nevertheless permitted him to testify as an expert, in view of evidence of a general uniformity of practices and procedures in urban communities concerning the medical problems involved. The weight of his testimony was of course left to the jury. *See* McCay v. Mitchell, 62 Tenn.App. 424, 463 S.W.2d 710, cert. denied (1971).

■ Yet while this statement of the law is correct "it must be predicated upon the assumption that the physician has used ordinary care and skill in making the examination of the patient and in arriving at a diagnosis of his condition." Methodist Hospital v. Ball, 50 Tenn.App. 460, 487, 362 S.W.2d 475, 487, cert. denied (1961); *accord* Haskins v. Howard, 159 Tenn. 86, 16 S.W.2d 20 (1929); Burnett v. Layman, 133 Tenn. 323, 181 S.W. 157 (1915); *see* Campbell v. Oliva, 424 F.2d 1244 (6th Cir. 1970). The crucial question in the present case is therefore whether Dr. Kiledjian used due care in diagnosing the plaintiff's condition and not whether he was entitled to choose one of two or more approved methods of treatment. All of the experts agreed that at the time of the 1972 operation, Mrs. O'Neill had a swollen, hyperactive thyroid gland. The critical problem was whether the enlarged mass was malignant or benign.

There is material evidence that a total thyroidectomy should be performed only when the gland is cancerous. After reading Mrs. O'Neill's medical files, plaintiff's expert concluded that there was no indication of cancer. He thought that it was probable that the swelling was due to Mrs. O'Neill's pregnancy and consequently that she should have been treated by medication and kept under observation for several months. If her condition persisted, his opinion was that it should then be treated with radioactive iodine.

On the other hand, the defendant testified, as did other local medical experts whose testimony was offered by the defendant, that the plaintiff's symptoms were indicative of cancer. Various tests conducted before the operation, although not showing conclusively the presence of cancer, were not incompatible with the possibility that it existed. The defendant's expert witnesses conceded, however, that nowhere in the medical record was any mention made that a malignancy was suspected.

It is true that the plaintiffs' medical expert and the experts testifying for the defendant have suggested alternative methods of treatment. The difference between the methods suggested by the two sets of experts is to be explained upon the ground that they made different diagnoses as to Mrs. O'Neill's condition. Because there was no positive evidence of cancer, the plaintiffs' expert was of the opinion that a conservative "wait and see" approach was indicated. In contrast, the defendant who believed that the gland was malignant decided that the only proper treatment was removal of the thyroid gland. Although there is evidence from which a jury could conclude that the defendant used ordinary care and skill in arriving at a diagnosis of a malignant thyroid requiring removal, we are of the opinion that the record also reflects substantial evidence from which a jury could reasonably find that the defendant in diagnosing the thyroid as malignant failed to use ordinary care and skill.

Accordingly, the order of the district court granting defendant's motion for judgment n. o. v. is hereby reversed, and the verdict of the jury in favor of the plaintiffs is hereby reinstated. The action is remanded to the district court for entry of judgment on the jury's verdict.