Accordingly, the City's motion now at bar is hereby denied.

IT IS SO ORDERED.

---

**CITY OF CLEVELAND, Plaintiff,**

v.

**The CLEVELAND ELECTRIC ILLUMINATING COMPANY, Defendant.**

**Civ. A. No. C75–560.**

United States District Court,
N. D. Ohio, E. D.

Sept. 14, 1981.

William B. Norris, Hahn, Loeser, Freedheim, Dean & Wellman, Cleveland, Ohio, James E. Young, Thomas E. Wagner, Director of Law, City of Cleveland, Cleveland, Ohio, for plaintiff.

John Lansdale, James P. Murphy, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

**MEMORANDUM AND ORDER**

KRUPANSKY, District Judge.

This matter is presently before the Court on a series of motions advanced both orally and in writing by the defendant The Cleveland Electric Illuminating Company (CEI) pursuant to Rule 50(a), Fed.R.Civ.P., whereby CEI seeks a determination that dismissal of the plaintiff's cause, in whole or in material part, is warranted on the grounds of insufficient proof. The City has responded in opposition. The Court, in the course of proceedings conducted on September 11, 1981, permitted oral argument relating to issues raised in the briefs during consideration of the remainder of the defendant's various assertions. *See* Transcript at pp. 16,399–16,500.

In passing on the defendant's motions, the Court is fully cognizant of the standards governing the application of Rule 50, Fed.R.Civ.P. As succinctly stated by the Sixth Circuit Court of Appeals in *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104–1105 (6th Cir. 1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979):

> The issue raised by a motion for judgment n. o. v. is whether there is sufficient evidence to raise a question of fact for the jury. *O'Neill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir. 1975). This determination is one of law to be made by the trial court in the first instance. *Id.* In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. *See Gillham v. Admiral Corp.*, 523 F.2d 102, 109 (6th Cir. 1975), *cert. denied*, 424

U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976). If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted. *Id.* at 109; *Reeves v. Power Tools, Inc.*, 474 F.2d 375, 380 (6th Cir. 1973); 9 Wright & Miller, Federal Practice and Procedure § 2524 (1971).[1]

*Accord: Milstead v. International Brotherhood of Teamsters*, 580 F.2d 232, 235 (6th Cir. 1978). *See also Pergola v. Pennsylvania R. R. Co.*, 311 F.2d 837, 838–839 (6th Cir. 1963).

■ Preliminarily, the Court would here note that plaintiff's argument that the denial of motions for directed verdicts during the first trial should now preclude consideration of the motion at bar is not persuasive. The City misperceives the teaching of *Remco, Inc. v. Faber Brothers, Inc.*, 34 F.R.D. 259, 260 (N.D.Ill.1964) as applied by this Court to ascertain the effect of prior dispositive rulings upon a retrial. As the City correctly observes, this Court's Order of May 18, 1981 limited the scope of the retrial to "only those issues which were left unresolved by the failure of the original jury to agree upon a verdict." Order of May 18 at 3. However, contrary to the City's intimation that only the new *jury* may decide the remaining unresolved issues, both this Court and the authorities cited in the Order of May 18, 1981 explicitly recognize that the unresolved issues are here retried *de novo* and that "parties at the retrial are not limited by the evidence previously adduced or the tactics formerly employed in the earlier proceeding." Order of May 18 at 5. Accordingly, it is disingenuous literalism to suggest that what evolved by the evidence and tactics of the first trial into a jury

---

[1]. The fact that the motions at bar are in the nature of motions for a directed verdict, as opposed to the motion for a judgment n. o. v. specifically considered in *Morelock, supra*, is of no consequence here, as the case authorities have recognized that the applicable standards are the same for both procedural devices. *Dulin v. Circle F Industries, Inc.*, 558 F.2d 456, 465 (8th Cir. 1977); *Yazzie v. Sullivent*, 561 F.2d 183, 188 (10th Cir. 1977); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (6th Cir. 1969); *Neville Chemical Co. v. Union Carbide*, 422 F.2d 1205, 1210 (3d Cir. 1970); 9 Wright and Miller, Federal Practice and Procedure § 2524 at 541–542 (1971).

issue, must also be a jury issue at the retrial. The City's conception of a retrial as a static and empty form owes more to paleontology than to litigation.

Mindful of the foregoing principles, the Court considers, in the first instance, defendant CEI's contention that it is entitled to a directed verdict that "as the only condition to CEI's agreement to synchronous interconnection with MELP during the relevant period, the City agreed to timely pay, as billed, the charges for power purchased from CEI, but the City failed to keep this agreement." Defendant's Memorandum in Support at 2. The plaintiff submits that a factual dispute exists as to the substance of the agreement purportedly reached between the instant parties during the period June 28–July 8, 1971. Plaintiff's Brief in Opposition at 8.

■ Initially, it appears from a review of the record that both the City and CEI here contend that an agreement of some sort was reached between June 28 and July 8, 1971. See e.g. Tr. 11,992, 12,005–10, 12,-04041, 12,391, 12,735, 13,325–38, PTX 1512, PTX 1513, PTX 1516, PTX 2860, CEI 60. It is the burden of the movant, in this instance CEI, to demonstrate that the evidence adduced at trial, viewed in the light most favorable to the City, is of such a nature that, without passing upon the credibility of a witness, reasonable minds must come to but one conclusion as to the substance of the agreement. For the reasons that follow, the Court concludes that the burden has not been met as to the June 28-July 8 agreement.

■ CEI urges the Court, in passing upon the instant motion, not to consider testimony pertaining to the agreement given by Warren Hinchee (Hinchee) because such evidence is "not probative" of that to which City Law Director James and CEI general counsel Howley agreed. CEI correctly notes that the threshold question in considering a directed verdict is to determine whether any substantial evidence exists upon the relevant issue. See Lovas v. General Motors Corp., 212 F.2d 805 (6th Cir. 1954). Pursuant to the teaching of Lovas,

evidence which is "contradicted by the physical facts" or which is offered by a witness not in a position to observe the facts to which he testifies, need not be considered as substantial or probative evidence of a sufficient nature such that, if in controversy with other evidence, the issue must be submitted to the jury. Accord, Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969); Moore v. Johnson, 568 F.2d 1184 (5th Cir. 1978); Tackett v. Kidder, 616 F.2d 1050 (8th Cir. 1980). See also 5A Moore, Federal Practice ¶ 50.02[1], n. 22 and cases cited thereunder.

■ In the instant matter, the evidence clearly establishes that Hinchee attended a meeting on July 8, 1971 which was held at the request of CEI to "once and for all resolve this situation [regarding the agreement] to the mutual satisfaction of everyone." Testimony of Clarence James at Tr. 12,001. Accord, Loshing at Tr. 13,324–32; Hinchee at Tr. 11,434. Moreover, Hinchee prepared a report on the meeting which he circulated to the participants. PTX 2850. In light of Hinchee's undeniable presence at the meeting and at least the inference that he was contemporaneously recording the events transpiring therein, it is difficult to credit CEI's assertion that Hinchee's testimony as to the agreements discussed at the meeting

> is no more probative than the testimony on personal knowledge of the witness who could not have observed the fact in *United States v. Bohannon, supra,* or the witness whose testimony was contradicted by physical and photographic evidence in *Lovas v. General Motors Corp., supra.*

Memorandum in Support at 12.

Having concluded that Hinchee's testimony is no mere "scintilla" as it relates to the agreements under discussion at the July 8, 1971 meeting, the most cursory review of the record discloses that sharp differences exist in the evidence as to the substance of any agreements. CEIX 60, a letter from CEI's Howley to Law Director James, evidences an "emphatic" disagreement with the characterization of the meeting ex-

pressed in PTX 2860 by Hinchee. Inasmuch as both Hinchee and Howley attended the same meeting wherein was discussed the agreement now at issue, this Court would usurp the most basic function of the jury to direct a verdict for the defendant upon this question. Accordingly, CEI's motion as it relates to the terms of any agreement is properly denied. It necessarily follows that without a directed verdict as to the terms of any agreement, CEI's subsequent dependent motions seeking directed verdicts as to the lawfulness of the terms and the City's inherent inability to meet the terms must also be denied.[2]

■ The instant defendant further seeks a directed verdict to the effect that

> if CEI's refusal to wheel PASNY power during the relevant period can indeed be found to constitute a violation of the federal antitrust laws as a matter of law, and is so found as a matter of fact, then the City may claim damages at most for approximately 23 megawatts of PASNY power, and moreover, may claim no damages for a refusal to wheel beyond July 1, 1975, the date when the complaint in this action was filed.

Memorandum in Support at 1, 2. The two elements of this portion of the instant motion will be considered *seriatim.*

In the first instance, CEI essentially argues that AMP-O, as the PASNY agent for the instant plaintiff, agreed at about May, 1973 to combine its application for 30 mw of PASNY power with the application of Allegheny Electric Cooperative (Allegheny) so as to defeat still another competing application by the State of Vermont. Under the agreement, Allegheny would reallocate the PASNY power to AMP-O while retaining approximately 7 mw thereof as compensation for higher wheeling charges incurred by Allegheny as a result of the arrangement. CEI asserts that this agreement was made prior to CEI's decision not to wheel

for AMP-O and was therefore motivated by fear of Vermont's competition. CEI concludes, accordingly, that it cannot be found liable for AMP-O's decision to forfeit the 7 mw of power.

In response, the City contends that the AMP-O/Allegheny "agreement" was a contingency plan to protect the availability of power to AMP-O should arrangements for wheeling and related services not be final at the time when PASNY considered and passed upon the applications. Under the City's view, the refusal to wheel precipitated the implementation of the contingency plan.

The Court observes that no issue exists as to the fact that CEI denied AMP-O's request to wheel PASNY power on August 30, 1973. PTX–38. Moreover, no issue exists as to the fact that PASNY awarded the 30 mw of power to Allegheny in August, 1974. Tr. 12,200; PTX 2196. Accordingly, the issue presented by the instant motion relates to whether AMP-O, prior to CEI's decision of August, 1973, effectively merged its application with that of Allegheny so that, had CEI agreed to wheel when requested, only 23 mw of power could have been available to AMP-O.

The testimony of Wallace Duncan (Duncan), AMP-O's attorney, and John C. Engle (Engle), president of AMP-O, indicates that Duncan and Engle met with officials of Allegheny in New Orleans "in early 1973 or late 1972" regarding the 30 mw of PASNY power. Tr. 12,201–02. *See also* Tr. 12,150, 12,161–67, 12,174–76, 12,213–16, PTX 2184, CEI 696. In CEIX 696, a letter written by Duncan to the Department of Justice on August 2, 1973, or nearly one month before CEI refused to wheel, Duncan advises the Department that AMP-O and Allegheny "have recently reached an understanding" whereby they "*would* combine their respective applications" before PASNY and whereby Allegheny "*would* take delivery of the 30 megawatts." CEI 696 (emphasis

---

2. Because the specific terms of any agreement are in controversy and remain issues for the jury, this Court does not here consider whether the terms as understood by the defendant were lawful. The instant ruling however does not prejudice either party from seeking a jury instruction as to the effect upon liability, if any, of the agreement as perceived by the defendant should the jury ultimately find such a perception to be consistent with the facts.

supplied). Moreover, as indicated by the future tense employed by Duncan, the agreement was stated to be "subject to working out some threshold problems with PASNY* * *." *Id.* The letter further suggests that the agreement is designed to allow AMP-O to remain competitive for the PASNY allocation while it "work[s] out its transmission agreements with PENELEC and CEI." *Id.*

The agreement itself, PTX 2184, does not compel the conclusion that AMP-O had irretrievably submerged its application into Allegheny's at a cost to AMP-O of 7 mw. PTX 2184, a letter from Engle to the head of Allegheny on May 25, 1973, begins as follows:

> With no intention of putting you on the spot *or attempting to obtain any irrevocable commitment* from you and Allegheny Electric Cooperative with respect to the last-remaining 30 megawatts of PASNY power to be allocated to preference customers located outside of the State of New York, I would like to open a written dialogue on the subject with you and Allegheny.

(Emphasis supplied).

The summary of the "concensus (sic)" between AMP-O and Allegheny set forth by Engle in PTX 2184 contains the following pertinent clause:

> (4) that *if AMP-Ohio is unable to work out arrangements for the transmission and delivery of said power* and energy before PASNY makes the allocation, the allocation should be made to Allegheny more or less in trust for AMP-Ohio pending the completion of arrangements by the latter to deliver this power and energy to its members.

*Id.* Moreover, in concluding, Engle speaks of coordinating the "respective applications" of both AMP-O and Allegheny. *Id.* at 2.

Accordingly, viewing the evidence in the light most favorable to the plaintiff, this Court does not find that reasonable minds must necessarily conclude that AMP-O had agreed in early 1973 to abandon its own attempt to receive PASNY power and was thereafter a candidate for only 23 of the 30 mw upon reallocation from Allegheny. The evidence, and the reasonable inferences inherent therein, can support a finding that any reallocation from Allegheny was a contingency plan to be realized only if AMP-O had not completed wheeling arrangements by the time PASNY trustees made the allocation award. There is substantial evidence in the record that both AMP-O and Allegheny were pursuing "their respective applications", PTX 2184, after the meeting in New Orleans. Defendant's motion, as it relates to the effects of any purported agreement between Allegheny and AMP-O in 1973, is thus denied.

However, the evidence is somewhat different with respect to the effect upon CEI's liability, if any, of a 1977 contract between AMP-O and Allegheny whereby AMP-O committed itself not to interpose any objection "to the immediate allocation of power and energy to Allegheny by PASNY" for subsequent reallocation to AMP-O. PTX 2209. CEI contends that the decision by AMP-O in October, 1977 to take future PASNY allocations only through Allegheny, and to thereby forgo ultimate delivery of that portion of the allocation retained by Allegheny to cover its wheeling costs, cannot be attributed to CEI's refusal to wheel in 1973. Essentially, the defendant maintains that CEI transmission lines were opened to the plaintiff for wheeling PASNY power in January, 1977 by order of the Nuclear Regulatory Commission (NRC) so that the decision by AMP-O in October, 1977 to take power only by reallocation from Allegheny could not have been founded upon an inability to obtain wheeling over CEI lines. *See* Tr. 12,169 (Stipulation 126); 14,472–75; Memorandum in Support at 29. The City, in response, essentially argues that even though wheeling had been ordered, the time required to establish a proper transmission schedule, while simultaneously seeking future allocations of PASNY power, mandated that AMP-O protect its ability to satisfy PASNY as to the absolute delivery of any future allocation by renewing, with some modifications, the 1974 contract with Allegheny.

A review of the evidence in the record discloses that the 1977 agreement was in part prompted by a decision by PASNY to alter the composition of preference power from all firm power to a mix of firm and peaking power (PTX 2209; Tr. 12,202) and by the commencement of hearings before PASNY on October 25, 1977 on the subject of future allocation of the now bifurcated power allotment. PTX 2209 at 2, Article IV. Stipulations read to the jury at Tr. 14,472–75 indicate that despite the NRC order to wheel, no wheeling schedule had been agreed upon as between CEI and the City until the City accepted in June, 1978, while still allegedly deficient, a schedule filed by CEI with the FERC in January, 1978. Tr. 14,474. Accordingly, the Court is constrained to conclude that evidence exists from which a reasonable finding could be made that AMP-O's contract in 1977 with Allegheny was prudent in the light of the need to insure delivery of PASNY power during the forthcoming reallocation hearings and in light of the length of time that could be reasonably anticipated as necessary for establishing a usable wheeling schedule. Defendant's motion therefore is properly denied.

Both the plaintiff and defendant have moreover briefed the issue of whether the City may claim damages for any refusal to wheel beyond the filing date of the instant complaint. While this tribunal is not persuaded by a thorough review of the applicable authority that a jury may properly consider whether a refusal to deal is final and permanent or is of a continuing nature resulting in repeated wrongs, *compare, e.g. Fontana Aviation, Inc. v. Beech Aircraft Corps*, 432 F.2d 1080, 1087 (7th Cir. 1970) with *Borger v. Yamaha International Corp.*, 625 F.2d 390, 398 (2d Cir. 1980), the Court does not here reach that issue inasmuch as it finds the complaint at bar to have been amended by implied consent at trial pursuant to Fed.R.Civ.P. 15(b).

Rule 15(b) provides as follows:

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The Sixth Circuit Court of Appeals in *MBI Motor Company, Inc. v. Lotus/East, Inc.*, 506 F.2d 709, 711 (6th Cir. 1974) pronounced the standard to be applied when considering the invocation of Rule 15(b):

Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue. *See Bettes v. Stonewall Ins. Co.*, 480 F.2d 92 (5th Cir. 1973); *Standard Title Ins. Co. v. Roberts*, 349 F.2d 613, 620 (8th Cir. 1965); *Niedland v. United States*, 338 F.2d 254, 258 (3d Cir. 1964).

In light of the teaching of *MBI*, the Court here notes that the instant defendant has fully litigated the issues pertaining to the post-filing attempts of the City to secure PASNY power, including the various proposals and counter-proposals offered during 1977 for wheeling (Tr. 14,473–74) and the 1977 PASNY-Allegheny contract discussed *supra*. Moreover, the record of the previous trial of this action discloses that defendant has long been under no mis-

apprehension that PASNY damages have been predicated by the City upon a refusal to wheel commencing during the actionable period and extending to the date when wheeling took place. Accordingly, the motion of CEI to limit damages, if any, to that period between the initial refusal to deal and the filing of the complaint is denied.

■ The defendant has further urged the Court to hold, as a matter of law, that CEI lacks the power to control prices inasmuch as its retail rates are regulated by the Public Utilities Commission of Ohio (PUCO). This Court, however, is of the opinion that there has been adduced evidence which, when viewed in the light most favorable to the plaintiff, would support the conclusion that CEI does possess the ability to control prices in the relevant market notwithstanding the regulatory authority conferred upon and exercised by the PUCO. The Court will accordingly permit the issue to be submitted to the jury which, in accordance with the pronouncements of the Fifth Circuit Court of Appeals in *Mid Texas Communications System, Inc. v. American Telephone & Telegraph Co.*, 615 F.2d 1372, 1386–1387 (5th Cir.) *cert. denied*, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980), shall be instructed with respect to the applicable regulatory provisions. The jury will be further instructed pursuant to the considerations of "comity and federalism" identified by the Second Circuit Court of Appeals in *Northeastern Telephone Company v. American Telephone & Telegraph Co.*, 651 F.2d 76, 90 (2d Cir. 1981), that it is to assume that the regulatory powers conferred upon the PUCO by the Ohio legislature have, during the period in question, been effectively exercised. That is to say, the Court does not intend to permit argument on behalf of the City which attempts to predicate the defendant's alleged ability to control prices, either in whole or in part, upon the purported ineffectiveness of the PUCO. The plaintiff, of course, remains free to attempt to persuade the factfinder that the defendant enjoys the power to control prices in the relevant market by virtue of any ability which it may have to set or negotiate prices which are not, under the Ohio statutory scheme, subject to PUCO review and control, and the Court's charge will so provide.

The Court further notes that the City, by its Brief in Opposition, once again seeks to place the so-called "Miller Stipulations" (Joint Stipulations 226–41) before the jury on the grounds that CEI opened the door therefor by citing the Court to a letter (CEI 60) in the motion at bar which the City believes to be prejudicial. Inasmuch as Rule 50(a) motions are not addressed to the jury and inasmuch as the sole reason for introducing the stipulations would be to remedy a prejudicial inference in the minds of the jury, the Court is unclear as to whether the City's instant request represents a desire to permit the jury to rule upon directed verdicts which is beyond accepted legal precedent. The motion is frivolous and unfounded and so properly denied.

The Court has considered the remainder of the defendant's motions for directed verdicts advanced during oral argument of September 11, 1981, Tr. 16,399 *et seq.* and finds, with the exception of CEI's motion pursuant to Rule 50(a) regarding plaintiff's damage claim predicated upon the loss of MELP's 85 mw generating unit, which ruling the Court hereby reserves, that the remainder of the defendant's motions should not be granted.

Wherefore, for the reasons more fully set forth hereinabove, the defendant's motions pursuant to Rule 50(a) Fed.R.Civ.P. for directed verdicts as to certain issues in the matter at bar not herein reserved for ruling are denied.

IT IS SO ORDERED.