Debra P. GRIMM, Plaintiff-Appellee,

v.

Q.V. LEINART and Ernest Phillips, Defendants-Appellants.

No. 81–5737.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 11, 1983.

Decided April 19, 1983.

Rehearing Granted June 6, 1983.

As Amended Sept. 23, 1983.

Frank Q. Vettori and J. Anthony Farmer (argued), Knoxville, Tenn., for defendants-appellants.

Herbert S. Moncier (argued), Edward E. Wilson, Knoxville, Tenn., for plaintiff-appellee.

Before KEITH and CONTIE, Circuit Judges, and JOINER*, District Judge.

KEITH, Circuit Judge.

The defendants-appellants, Q.V. Leinart and Ernest F. Phillips, appeal from a district court judgment entered against them in this case. The plaintiff-appellee, Debra Grimm, brought this action pursuant to 42 U.S.C. § 1983. She alleged that the defendants, acting under color of state law, violated her civil rights. For the reasons set forth below, we affirm in part and reverse in part.

I.

The facts of this appeal arise out of a political dispute between the defendants, both County Commissioners, and the Superintendent of the Anderson County school system, Paul Bostic. In addition to being a county commissioner, defendant Phillips was also a criminal investigator for the state attorney general and a deputy sheriff for Anderson County, Tennessee.

The plaintiff is a guidance counselor at Lake City High School in the Anderson County school system. Among her duties are the maintenance of student records. The records of former students in the county are generally kept in a central location at the pupil personnel office. However, some of the Lake City High School students records remained at the high school because of a lack of space in the downtown central location. Therefore, it was sometimes necessary to have records brought to the central office.

In November 1980, the plaintiff was instructed to bring the defendants' records to the pupil personnel office in Clinton, Tennessee. She took the records to the office as requested. The central records office is also the office of the superintendent of the county schools. The superintendent is the custodian of the records and has ultimate authority over them.

The next morning, the defendants and the school's principal came to the plaintiff's office. When they asked to see their records, she informed them that the records were at the central office.[1] The plaintiff testified that, upon hearing this, Phillips threatened to charge her with forgery if the records had been altered. Phillips also showed the plaintiff his business card which indicated that he was a criminal investigator for the State's Twenty-Eighth Judicial District. The plaintiff testified that she interpreted the card as identifying Phillips as an officer of the law. The defendants then stated that they were going to the central office to see their records. They wanted the plaintiff to go with them. Leinart allegedly told her she could come with them now, or that they would take legal action to force her to do so later. Interpreting this as a threat, the plaintiff agreed to accompany them. The three of them travelled to the pupil personnel office in Leinart's car.

When they arrived at the central office, the plaintiff sought out Ms. Esther C. Tiller, an employee in the central office. The plaintiff told Tiller that the defendants wanted to see their records. Tiller retrieved the records and there was a great deal of discussion, much of it in a loud and boisterous manner. Tiller and the plaintiff became distraught. Superintendent Bostic came into the records office and asked the defendants to leave. After a brief confrontation, the defendants drove the plaintiff back to her school. The defendants apologized for the incident, telling the plaintiff that she was being used as a pawn in a political feud.

The plaintiff was subsequently investigated by the Tennessee Bureau of Investigation and the Anderson County Grand Jury on the alleged alterations. She was also mentioned by name in several newspaper articles about the incident. Criminal charges brought against Phillips and Leinart for kidnapping were dismissed.

In April 1981, the plaintiff brought this civil action against the defendants. She alleged that the defendants, acting under color of state law, arrested her without probable cause, falsely imprisoned her, and damaged her reputation. In August 1981, the case was tried before a jury. On August 13, the jury found in favor of the plaintiff and awarded her $100,000 in compensatory damages and $20,000 in punitive damages. Upon a motion filed by the defendants, the district court granted a remit-

---

* Hon. Charles W. Joiner, U.S. District Judge, Eastern District of Michigan, sitting by designation.

1. The defendants had graduated almost twenty (20) years earlier.

titur of compensatory damages in the amount of $40,000.

## II.

■ First, the defendants maintain that the district court should have granted a directed verdict or a judgment *non obstante veredicto* in their favor. "In ruling on the motion [for directed verdict] the trial court views the evidence in the light most favorable to the party against whom the motion is made." *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696 n. 6, 82 S.Ct. 1404, 1409 n. 6, 8 L.Ed.2d 777 (1962) (quoting 5 Moore's Federal Practice 2316 (2d ed. 1951)); *Rockwell International Corp. v. Regional Emergency Medical Services of Northwest Ohio, Inc.,* 688 F.2d 29, 31 (6th Cir.1982). The directed verdict is proper only when by so viewing the evidence, there is "a complete absence of pleading or proof on an issue or issues material to the cause of action or where there are no controverted issues of fact upon which reasonable men could differ." *Rockwell,* 688 F.2d at 31. This standard is also applicable to a motion for judgment n.o.v. *Standard Alliance Industries, Inc. v. Black Clawson Company,* 587 F.2d 813, 823 n. 23 (6th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979); *O'Neill v. Kiledjian,* 511 F.2d 511, 513 (6th Cir.1975).[2]

The defendants' argument is unsupported by the evidence. The plaintiff testified that (1) Phillips identified himself as a criminal investigator for the county sheriff's department, (2) both defendants coerced her into going with them under threat of legal process, (3) Leinart overruled her decision to drive her own car and instructed her to ride with them, and (4) the defendants held the plaintiff against her will for several hours. Given these allegations, we hold that the plaintiff presented sufficient evidence to raise a material issue of fact for the jury.

■ Second, the defendants contend that the district court improperly commented on the character of one of the defendants before the jury. It is argued that the judge's comment was reversible error because it effectively took the defendant's credibility away from the jury. We disagree.

During the direct examination of defendant Phillips, the following verbal exchange took place:

Q You say "we" left. Who do you mean?

A Mrs. Grimm, Danny Phillips and Mr. Leinart and myself. And a lady that works on the first floor was with us. She said a young couple was in our office wanting to be married, and I invited Mrs. Grimm to go with us. And she came around.

THE COURT: Now, let's don't go into the marriage, and stuff like that. Tell him to keep his mind on the points.

MR. FARMER [DEFENDANT'S COUNSEL]: I am sorry, Your Honor. He has never been down here before.

THE COURT: He has been around. I can tell that.

No objection was made by defendant's counsel. Therefore, this court will reverse only if the court's comment amounted to plain error. *Saltzman v. Fullerton Metals Co.,* 661 F.2d 647 (7th Cir.1981); *Newman v. A.E. Staley Mfg. Co.,* 648 F.2d 330 (5th Cir.1981); *Morreale v. Downing,* 630 F.2d 286 (5th Cir.1980). The judge's remark, while perhaps unwise, was not so prejudicial as to take the issue of Phillips' credibility away from the jury. Hence, we find no reversible error.

■ Third, the defendants argue that the amount of the court's remittitur was inadequate. In *Manning v. Altec,* 488 F.2d 127 (6th Cir.1973), this court stated that it would review a trial court's order of remittitur only for abuse of discretion. "In order to determine whether there has been an abuse of discretion it is necessary to examine the evidence on damages and the considerations which led the trial judge to order remission of a part of the verdict." *Id.* at 131. *See also Smith v. John Swafford Furniture Co., Inc.,* 614 F.2d 552, 553 (6th Cir. 1980).

*Reeves v. Power Tools,* 474 F.2d 375, 380 (6th Cir.1973). *See also Scharfenberger v. Wingo,* 542 F.2d 328, 333 (6th Cir.1976). The standard is the same for an appellate court. *Scharfenberger,* 542 F.2d at 333. *O'Neill v. Kiledjian,* 511 F.2d 511, 513 (6th Cir.1975).

---

2. Judgment not withstanding the verdict is not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. It should not be granted if there is a conflict in the evidence, and credibility of evidence is not to be considered in passing on a motion for judgment.

We have examined the evidence on damages and the court's subsequent remittitur. We find no abuse of discretion. Although the jury's finding of liability is supported by the record, the jury's finding of damages was clearly not within "the maximum limit of a reasonable range." *Smith,* 614 F.2d at 553. However, the compensatory damages award finally ordered by the court is more than amply supported by the record.

■ Finally, the defendants attack the adequacy of the district court's instruction on punitive damages. The court instructed the jury as follows:

Now, punitive damages are allowed where the conduct of the defendant shows a disregard for the rights of the person injured, or the plaintiff. In order to allow punitive damages, the acts of the defendant must be intentional and willful, and not just negligently. Must be more than negligence in order to justify punitive damages.

But, if you find that the defendants acted willfully, and intentionally, and thereby deprived plaintiff of her rights—Civil rights, then you may—you don't have to—allow punitive damages in addition to the civil damages.

The district court's instruction properly states the defendants' conduct must be willful in order to justify the assessment of punitive damages. However, the instruction does not inform the jury of the standard for punitive damages as recently pronounced by the Supreme Court in *Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).[3] In *Wade,* the Supreme Court held that punitive damages could be assessed against a defendant in a § 1983 action where that defendant acts with "reckless or callous indifference to the federally protected rights of others." The standard articulated in *Wade* does not require a finding of an intentional deprivation of a federally protected right. Instead, a high degree of negligence which the law characterizes as "reckless" may also be sufficient to assess punitive damages against a § 1983 defendant.

In reviewing the district court's punitive damage instruction, we find it erroneous. At an early point in the instruction, the district court judge stated, "punitive damages are allowed where the conduct of the defendant shows a *disregard* for the rights of the person injured" (emphasis added). This statement is clearly incorrect since *Wade* requires a *reckless* or *callous* disregard of the plaintiff's rights. Hence, the district court's instruction incorrectly states a significantly lower standard of negligence than is required by *Wade.*

The district court's instruction also incorrectly states that:

In order to allow punitive damages, the acts of the defendant must be *intentional* and *willful*, and not just negligently. Must be more than negligence to justify punitive damages (emphasis added).

This statement is also incorrect because it states that there *must* be an intentional and willful deprivation by the defendant in order to award the plaintiff punitive damages. The Supreme Court expressly stated in *Wade* that it is unnecessary that a § 1983 defendant act intentionally. A showing of reckless conduct is sufficient to support an award of punitive damages.

In order to comply with the *Wade* standard, the district court should instruct the jury that it may award punitive damages if it finds that the defendant willfully and intentionally deprived the plaintiff of his federally protected rights *or* if the defendant engaged in conduct that exhibited a reckless or callous disregard of the plaintiff's rights. The punitive damage instruction previously given by the district court failed to meet the appropriate standard. Accordingly, we reversed the award of punitive damages.

■ Normally, this would call for a remand to the district court for a new trial on all of the issues or at least on the issue of damages. *Gasoline Products Co., Inc. v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931), *Thompson v. Camp,* 167 F.2d 733 (6th Cir.1948) (per curiam). However, this set of facts clearly indicates that before remand is ordered this court should consider the application of the remittitur doctrine. *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935).

This court has long since held that it has the authority to enter a remittitur order where the reversible error can be reasonably approximated to a definite portion of the damage award, or if the maximum effect of the error can be established. *Central Paper Co. v. Southwick,* 56 F.2d 593

---

**3.** *Smith v. Wade* was decided after the trial was completed in this case.

(6th Cir.1932); *New York, C. & St. L.R. Co. v. Niebel,* 214 F. 952 (6th Cir.1914). Here, the reversible error was in the punitive damages instruction, and the maximum effect of the error may be reasonably fixed at $20,000, the amount of the jury's punitive damages award. Therefore, the plaintiff should at least have the option of accepting the $60,000, the amount of the jury's compensatory damage award after the remittitur granted by the trial judge. During oral argument before our court, plaintiff's counsel, when asked about the possibility of a need to reverse because of the error in the punitive damages instruction, indicated a willingness to accept a judgment without the amount awarded by the jury for punitive damages instead of a new trial. We also believe $60,000 is fair compensation for the injuries the plaintiff received.[4]

However, since counsel has not had an opportunity to consult with his client on this issue, the plaintiff should be given the option to have a new trial. Therefore, the order of this court is to remand to the district court for entry of judgment in the amount of $60,000 unless the plaintiff files with the district court a notice that she rejects the judgment in her favor in the amount of $60,000 and demands a new trial. If she does file such a notice, a new trial shall be ordered on the punitive damages issue only. Since the finding of liability and the award of compensatory damages are in no way intermingled with the improper punitive damages instruction, it would be unfair to force the plaintiff to reargue her entire claim before a second jury. *Devine v. Patteson,* 242 F.2d 828, 832–33 (6th Cir.), *cert. denied,* 355 U.S. 821, 78 S.Ct. 27, 2 L.Ed.2d 36 (1957).

Accordingly, the judgment as to punitive damages is reversed. The judgment in all other respects is affirmed.

CONTIE, Circuit Judge, concurring:

I concur in the result reached by the majority, but feel the need to express my opinion regarding the majority's application of the remittitur doctrine.

When a federal court concludes that a damage award is excessive, it may use a remittitur as an alternative to ordering a new trial. *Flame Coal Co. v. United Mine Workers of America,* 303 F.2d 39, 47 (6th Cir.), *cert. denied,* 371 U.S. 891, 83 S.Ct. 186, 9 L.Ed.2d 125 (1962). When properly applied, the remittitur doctrine can aid in the conservation of judicial resources and the reduction of legal costs for the parties. Accordingly, the remittitur doctrine has been used when the evidence in the record does not support a particular damage award, *Wheatley v. Ford,* 679 F.2d 1037, 1040–41 (2d Cir.1982); *Carlton v. H.C. Price Co.,* 640 F.2d 573, 582 (5th Cir.1981); *Flame Coal Co. v. United Mine Workers of America,* 303 F.2d at 46–47, or when the jury's "error or oversight is patent and the correction mechanical." *Shingleton v. Armour Velvet Corp.,* 621 F.2d 180, 182 (5th Cir.1980).

In this case, the majority orders "a remand to the district court for entry of judgment in the amount of $60,000 unless the plaintiff files with the district court a notice that she rejects the judgment in her favor in the amount of $60,000 and demands a new trial." The majority does not, however, arrive at this decision by carefully examining the evidence and concluding that the jury's punitive damage award is excessive. Indeed, a properly-charged jury has never decided the issue of punitive damages. Nevertheless, the majority justifies the remittitur on the basis of: (1) a statement attributed to plaintiff's counsel in which he "indicated a willingness" to accept the remittitur, and (2) an observation that the $60,000 actual damage award is "fair compensation" for plaintiff's injuries. That the majority may have correctly assessed the fair amount of compensation in this case does not legitimize its attempt to use the remittitur doctrine to further its own conclusion that the plaintiff is not entitled to punitive damages. This is an issue which a properly-charged jury should resolve.

---

4. This court realizes that the primary purpose of punitive damages is to deter future violations and not to compensate the victim. However, any litigation involves transaction costs. The costs are not limited to the monetary costs of the litigation, but also include the toll the litigation takes on the plaintiff and the community. Our statement to the effect that we believe $60,000 adequately compensates the plaintiff for her injuries merely reflects our awareness that the plaintiff is in the best position to judge whether a potential punitive damages award is worth the ordeal of a new trial. If she determines that under the present circumstances of her case, the transaction costs are too high, she should not be forced into enduring a new trial merely for the purpose of exacting vengeance on the wrongdoers.

I also believe that the majority's application of the remittitur doctrine is completely unnecessary in this case. The majority has purportedly given the plaintiff the "option" of accepting the remittitur. The plaintiff, however, already has the option of walking away with her compensatory damage award and thus not pursuing her punitive damage claim at a second trial. Indeed, by correctly limiting the new trial to the issue of punitive damages, *Devine v. Patteson*, 242 F.2d 828, 832–33 (6th Cir.), *cert. denied,* 355 U.S. 821, 78 S.Ct. 27, 2 L.Ed.2d 36 (1957), the majority has eliminated any risk to the plaintiff should she refuse to accept the remittitur. In my view, the case should simply be remanded to the district court for a new trial on the issue of punitive damages, and the remittitur doctrine should not be involved.